## COMMON PLEAS AND PROBATE COURTS OF OHIO.

ALSO OF THE

## SUPERIOR COURT OF CINCINNATI.

### SPECIAL AND GENERAL TERMS.

(Franklin County Common Pleas.)

ROBERT S. SMITH, on behalf of the City of Columbus, Ohio, v. THE COLUMBUS, LONDON & SPRINGFIELD RAILWAY COMPANY.

(1). The publication of the notice provided for by section 2502, Revised Statutes, is sufficiently made by the publication of such notice in one daily paper on the same day of the week for three consecutive weeks.

(2). The calling of a vote on the passage of an ordinance of a general or permanent nature, and the voting thereon, without said ordinance having been read on three different days, or such reading properly dispensed with, is a vain and useless act, and such ordinance could not be defeated by a vote taken in that manner.

(3). Under the governmental act for the city of Columbus an ordinance which had been read on two separate days before the regular election for councilmen may, after the annual organization of the council following said election, be read a third time and passed. Unfinished business of the council is not dropped with each council election.

WILLIAMS, J.

This is an action brought by the plaintiff, on behalf of the city of Columbus, to enjoin the defendant from constructing and from operating and maintaining a street railway upon certain streets in the city of Columbus under and by virtue of the provisions of a certain ordinance, upon the ground that said ordinance is illegal and void.

Four reasons are assigned for the invalidity of said ordinance, to-wit:

First: That public notice of the application for the grant expressed in said ordinance was not given in a daily paper, published in said city of Columbus, for a period of three consecutive weeks.

Second: That the ordinance under which the defendant was attempting to proceed when restrained was, on the 9th day of March, 1900, introduced at a meeting of a regularly elected council and duly read the first time, and the second time, and referred to the committee of said council on judiciary, and railroads and viaducts, and that the same was, at a regular and second session of said council, on the 9th day of April, 1900, reported back by said committee not approved. That said committee was relieved from the further consideration of said ordinance, and said ordinance was put upon its passage; that the yeas and nays were taken upon the passage of the same, seven votes being in the affirmative and eleven votes in the negative, and said ordinance was lost and so declared; that a motion to re-consider was made, and lost, and that on said April 9, 1900, said council adjourned and never again convened; that at a regular municipal election held April 2, 1900, an entirely new council, consisting of nineteen members, was elected; that less than half of the members of said council so elected on said April 2, 1900, had been members of said former council; that on the 16th of April, 1900, said nineteen members elect, convened, presented their certificates, qualified and proceeded to organize, as prescribed by statute; and that thereby an entirely new council of said city was constituted; that the life of said former council and the

[COPYRIGHT, 1901, BY CARL G. JAHN.]

term of all of the members of said former council ended prior to said organization of said new council; that at the regular meeting of said new council on April 23, 1900, said council, by a vote of a majority of its members, caused the aforesaid ordinance as introduced and defeated in said former council, to be read; that said reading was the first and only time said ordinance was read before said council; that the rule requiring said ordinance to be read on three different days was not dispensed with, but that said reading of said ordinance was wrongfully and falsely styled the third reading; that thereupon it was moved, and the motion prevailed, that certain amendments recommended by the board of public works to said ordinance be read, and the same were read, a copy of which amendments is set out in the petition. That thereupon a vote was taken upon the adoption of all of said amendments collectively, and a majority of the members of said council voted in the affirmative. That the said amendments were upon one call of the yeas and nays, declared adopted; that thereupon one further amendment was offered and declared adopted; that said amendments had not, nor any of them, ever before been introduced or read either before said council, or before the former council, or any council of the city of Columbus; that said ordinance as amended was not introduced or read before said council, nor before any former council of said city at any time; that immediately after said amendments were declared adopted, a motion was made and carried that said ordinance as amended be placed upon its passage, and that the yeas and nays were taken upon the passage thereof as amended, and there being twelve votes in the affirmative and six in the negative, said ordinance was declared passed; that a motion to re-consider said vote was made and lost; that thereafter, on said April 23, 1900, said council adjourned; and that said proceedings of said city council, at said meeting of April 23rd, touching said ordinance, were illegal, null and void, and that said ordinance as amended, was not legally passed at that meeting, and that the same has never been passed.

Third: That the defendant failed to produce to the city council the written consents of the owners of more than one-half of the feet front of the lots and lands abutting on the public ways along which it is proposed, under the authority of said ordinance, to construct said railway. And,

Fourth: That said ordinance was prepared by the defendant and purports to and was intended to provide a single track loop encircling the central part of the city of Columbus for the circulation of interurban cars and traffic; that said provision is illusory and abortive by reason of the fact that the route specified for said loop is interrupted for a distance of two hundred feet; that said space constitutes a break in said loop in which there is no authority to construct said railway; that the failure of said ordinance to provide such loop as it purports and was intended to do, vitiates and annuls the contract on the part of the city which said ordinance represents.

A temporary restraining order was allowed in this case pending application for a temporary injunction, and by agreement of counsel the application was submitted, and it was agreed that it should be considered upon the pleadings, affidavits and exhibits thereto attached; that in event of the petition being considered sufficient upon its face to warrant the granting of a temporary injunction, that a motion of the defendant to dissolve said injunction on the ground that the facts stated in the petition were untrue, should be considered as submitted and for decision.

The case is before me for determination upon the naked legal question of the right of the defendant to proceed under the ordinance claimed to have been passed by the city council. Hence that part of the able argument of counsel upon the great value of the proposed improvement, the benefits to accrue to the city in event it is permitted to be made, and the public demand for the same, on one hand, and on the other hand the able argument on the question as to whether or not the city authorities have voluntarily surrendered, without sufficient consideration, a great and valuable franchise, and terminal facilities for a new railroad, are not matters to be considered in determining the questions here submitted, but rather subjects which should have been, and probably were, addressed to the authorities having the power and right to grant such privileges.

I shall endeavor to deal solely with the legal phases of the question.

The first reason assigned for the invalidity of the ordinance is the want of public notice, as before stated.

Section 2502, of the Revised Statutes, provides that no ordinance of the nature of the one under consideration "shall be passed until public notice of the application therefor has been given by the clerk of the corporation in one or more of the daily papers, if there be such, and if not then in one or more weekly papers published in the corporation, for the period of at least three consecutive weeks."

In this case the affidavit of the assistant city clerk states that notice of such application was published one day in

each of three consecutive weeks in three daily papers of general circulation in the city of Columbus, in two of which papers the publications were on the same day of the week for the three consecutive weeks.

Counsel for plaintiff contend that a notice once a week is not sufficient, but that the statute above quoted contemplates that such public notice if given in a daily paper should be given on the eighteen secular days of said period of three consecutive weeks.

This question was made in the case of Simmons v. The City of Toledo et al. 5th C. C., 124. In that case, the identical issue arose. An application had been made to the city of Toledo for a franchise to construct and operate an electric street railway in the streets of that city. The judge deciding the case says:

"It is contended, however, that it was not legally published, in this: First, that as a daily paper was selected, the notice should have appeared therein on every secular day for three weeks."

After discussing the subject, he concludes in these words:

"The publication of the notice in the one daily paper on the same day of the week for three weeks might properly be regarded by council as sufficient, and would authorize it to proceed."

I believe that in this case, as in that, the provisions of the statute have been complied with by the publication made. The reason for the legislature specifying a daily paper for such publication, if there be such, may be because it considered that the daily papers in the cities reached a greater number of persons who might be interested in the notice, than the weekly papers.

The second objection urged to the ordinance is dual in its nature. It is claimed first, that the ordinance as originally introduced, was put upon its passage on April 9, 1900; that the yeas and nays were taken, and that the said ordinance was lost and so declared. A transcript of the proceedings of the city council has been submitted with the papers and is relied upon by both parties in so far as such transcript states the proceedings of the council. The transcript shows that on said April 9, 1900, the ordinance was duly reported back by the committee to whom it had been referred, not approved; that said committee was then relieved from further consideration thereof, and on motion the ordinance was placed upon its passage; the yeas and nays were called and there were seven votes in the affirmative and eleven in the negative, and the ordinance was declared lost.

Section 1694, of the Statutes, provides that "ordinances of a general or permanent nature, shall be fully and dis-tinctly read on three different days, unless three-fourths of the members elected dispense with the rule."

The ordinance was not read before being placed upon its passage. The rule requiring that ordinances of a general or permanent nature shall be read on three different days was not dispensed with. This ordinance is clearly one of a general and permanent nature. It had only been read on two different days, and hence could not be placed upon its passage without a third reading. The provisions of the statute in that respect are not merely directory, but are mandatory. Without a third reading, the calling of the vote on the passage of the ordinance was a nullity and the voting thereon, whether favorable or unfavorable, to the ordinance, was a vain and useless act. If a majority had voted in favor of the ordinance, it is conceded that it could not have been considered carried. That being true, the ordinance would have remained before the council just as it would if no vote had been taken. The fact that a majority voted against the ordinance does not alter the rule. The ordinance was in exactly the same position before the council after the vote as before. Hence, the ordinance was not defeated at the meeting of the council on April 9th.

This brings us to the next and most important question in the case. On April 2nd, at a regular municipal election, nineteen councilmen were elected to represent the nineteen wards of the city, the members so elected comprising the entire membership of the council. On April 16th, said members elect convened and organized as prescribed by statute. At the next regular meeting thereafter, on April 23rd, said council by the vote of the majority of its members, caused the ordinance heretofore mentioned to be read, said reading being styled by said council the third reading thereof. Counsel for plaintiff contend that the council before which said ordinance was read on April 23rd was a new and different council from the one before which said ordinance had been read on two other occasions, and that hence, said ordinance must be read on three different days before the council as then constituted, unless the rule be dispensed with by a three-fourths vote of the members, before it could be placed upon its passage.

In other words, it is claimed that in the city of Columbus we have a new council every two years; that the old council dies at the expiration of the terms of the members constituting it, and with its death, all undisposed of business and legislation also dies, and that no matter pending before such council at the time of its demise can be considered by the council succeeding

it except as such matters are introduced and considered "de novo".

Until a few years ago the council of this city was constituted and elected as are the councils of most of the municipalities of our state. Each ward of the city was represented by two councilmen, and these members were elected in alternate years, so that one-half of the membership of the city council would hold over from year to year; but under the charter law each ward is represented by but one member in the city council, and all are elected at the same general election. The character and life of a city council may best be determined by the statutory provisions respecting it. A city council is the creature of the statutes, and possesses and can exercise only such powers as are conferred upon it by the legislature. Section 1, of the Charter Law provides that "the legislative power and authority shall be vested in a council which shall consist of one member from each ward in which the territory of the city may be divided * * *. Each member shall take the oath of office and shall hold his office for the term of two years, and until his successor shall be elected and qualified."

Section 3 provides the manner in which the council may legislate, and provides that certain ordinances, resolutions and orders shall, before they take effect, be presented to the mayor of the city for approval. It further provides that "the mayor, if he approves such ordinance, resolution or order, shall sign it, and if he does not approve it, he shall return the same to the council with his objections, within ten days thereafter, or if the council is not in session, then at the next regular meeting thereafter, which objections the council shall cause to be entered in full on its journal, and if he does not return the same within the time above limited it shall take effect in the same manner as if he had signed it."

Section 9 of the Charter Law provides that "the council shall, annually at the time of its organization, elect a president and vice-president from its own body, and may elect a sergeant at arms and page, who shall perform such duties belonging to their respective offices as may be prescribed by ordinance and the rules of the council not inconsistent with law."

These sections of the Charter Law are quoted for the purpose of determining the plan and intent of the legislature in creating the council.

In this city, it places the power of legislation exclusively in that body, subject only to the veto power in certain instances. It provides for a city council and the election of members of that body from time to time. It provides for the organization and meetings of the council, but nowhere mentions a final adjournment of the body, and I am inclined to the opinion that the legislature contemplated that it should be considered as a continuous organization.

Section 1 above quoted, provides that each member shall hold his office for the term of two years, and until his successor shall be elected and qualified. By this provision a member of the city council may hold for a greater term than two years, if, at the regular annual election at which councilmen are to be elected, for any reason his successor should not be elected, or, if elected, he should fail to qualify, or he should die before the time for qualifying as such member. So the old member would continue to hold until another election and the qualification of such person as should be elected at such election. If the city council were considered as constituted as the legislature or the congress of the United States, this provision respecting the holding over of members of council, would be a vain and meaningless thing. If the council died at the end of every two years, how could a member of such council hold over when the body of which he was a member, had ceased to exist? It is for the very purpose of insuring that the council shall be a continuous body that the statute provides that members of the body continue such membership until their successors qualify.

Section 3 of the Charter Law provides that all ordinances, resolutions and orders of certain kinds, shall be transmitted to the mayor for his approval, and that if the mayor does not approve any such ordinance, resolution or order, he shall return the same to the council with his objections, within ten days thereafter, or if the council is not in session, then at the next regular meeting thereafter, which the city council shall cause to be entered in full upon the journal. This provision is not qualified as to time when such ordinance is transmitted to the mayor, and the rule is the same, whether such ordinance, resolution or order is passed at the last meeting preceding the installation of new members, or at some other time. It also provides that the council may by a certain vote, pass such ordinance, resolution or order over the veto of the mayor. The legislature certainly did not contemplate that one body could pass an ordinance and then die, and a new council come into existence, receive the veto of the mayor upon legislation of a defunct body and then act favorably upon such legislation over said veto. If the law-making power had contemplated the death of a council, it undoubtedly would have made some such provision for ordinances

passed at the last session of a council, as is made by the constitution of the United States for bills not returned by the president because of the adjournment of congress before the expiration of the ten days within which otherwise they are to be returned, if not signed.

The 9th section of the Charter Law provides for the annual organization of council by the election of its proper officers. If, in contemplation of law, a new council came into existence every two years, the law-making power would have provided that that body should elect its officers just as is done by the legislature and by congress. The fact that the election of such officers occurs annually shows that the law makes no distinction between the organization of the city council for the years in which its membership changes, and that in years in which there is no such change.

In other words, the council is a continuous body, sitting from year to year and with annual organizations.

Connsel for plaintiff have cited Beekman's Case, 11th Abbott's Practice Reports, page 164, in support of their position. That case follows, and is upon the authority of the case of Wetmore v. Story, 22 Barbour, 414.

In the 22nd Barbour case, the court held that "the board of aldermen for the year 1853 could not take up, and pass, a resolution of the board of assistants of the year of 1852, authorizing the construction of a railroad in the streets of the city and give it effect as a law, without consulting the newly elected board."

In other words, it holds that in municipalities having a bi-cameral system of local government, ordinances must be passed by both branches simultaneously; that is, the enactment must be passed while both branches are holding office. This is reasonable, but can have no application to a body having a continuous existence, whose membership, or a part of whose membership, may change.

The brief for plaintiff contains a quotation from Dillon on Municipal Corporations. But a reading of the whole sentence discloses that the matter quoted refers to legislative bodies consisting of two branches and is upon the authority of the New York cases before mentioned. The language is this:

"The rule of legislative bodies, consisting of two branches, that unfinished business at the end of a session is discontinued and must be afterwards taken up anew, if at all, was considered applicable to the legislative acts of the common council of New York composed of a board of aldermen and a board of assistant aldermen."

The only authority supporting plaintiff's contention on this point cited, is a part of section 47, from Horr & Bemis' Municipal Police Ordinances. The text quoted is strictly in support of plaintiff's position. But the only case on the subject cited by the authors is directly opposed to it. This is the case of McGraw v. Whitson, 69 Iowa, page 348, and comes nearer deciding the question made in the case at bar than any other case I have been able to find.

In the Iowa case, it is held that if there be a sense in which there is a succession of city councils, there is such immediate succession as to involve a substantial continuity, when taken with the fact that one-half of the aldermen hold over. And where a proposed ordinance was read on two separate days before the election of a new mayor and aldermen, and was read the third time after the newly elected mayor and aldermen had taken their seats, held: That section 489 of the code was sufficiently complied with and the ordinance was for that reason not invalid.

In his opinion, the learned judge deciding the case, says: "If there be a sense in which there is a succession of city councils (which we do not determine,) there is such immediate succession as to involve a substantial continuity, when taken with the fact that one-half of the aldermen hold over; and we have no doubt that a continuity was contemplated by the legislature. We believe that the proper conduct of municipal affairs demands it."

And again he says: "We can not think that it was intended that all unfinished business should be dropped at each council election and taken up again entirely new, if at all; to justify us in so holding, we think we should have something stronger than a mere inference."

And so, adopting the language and views of the court in the Iowa case, I am of the opinion that to justify me in holding that it was intended by the legislature that all unfinished business should be dropped at each council election, and taken up again entirely new, I should have something more than a mere inference.

The proper conduct of municipal affairs demands that there should be a substantial continuity of the municipal legislative body. The analogy between the city council and the general assembly, or the congress of the United States, is not sufficiently strong to be of controlling importance, and this view of the case is not in conflict with any of the text writers cited by plaintiff's counsel, except the text book on Municipal Police Ordinances.

The Iowa case is cited by leading text writers on municipal affairs, including Dillon and Tiedeman.

"A requirement that a proposed ordinance shall be read on three different

days, is fulfilled if it be so read, even when the final reading takes place after the election and induction into office of a new mayor and of several new members of the municipal council. The prescribed reading may also be had at an adjourned meeting." Tiedeman on Municipal Corporations, section 148.

It is urged that the amendments of April 23rd, were material. The amendments made to the original ordinance were not such material amendments as to require that such ordinance as amended should be read on three different days, and I do not consider that this objection is a substantial one.

The final contention of plaintiff is that the ordinance does not provide the intended loop, and that hence the whole plan is abortive. The purpose and scope of the ordinance is disclosed by its title. The body of the ordinance is in harmony with the plan so disclosed, and the fact that a portion of the route fails for lack of proper consents of abutting owners does not render the ordinance invalid. The municipality may make a new grant, as to that portion of the route, when the necessary consents are obtained. Sanfleet v. The City of Toledo et al., 10 C. C., 460.

But the defendant does not concede that they have not obtained sufficient consents as alleged by plaintiff, and this becomes a question of fact to be determined if the case should hereafter be tried upon the facts.

The plaintiff has alleged that the defendant failed to produce to the said city council the written consents of the owners of more than half of the feet front of the lots and lands abutting on the public ways along which it is proposed, under the authority of said ordinance, to construct said railway. Plaintiff's petition is verified positively.

To meet this the defendant has filed the affidavit of one H. A. Fisher, who avers positively that the defendant produced to said council the written consents of the owners of a majority of the feet front of the lots and lands abutting on such streets and avenues along such portions thereof as are covered by said franchise for the construction of a street railway by said defendant on such portions, and that a sufficient number of said consents was so produced and were in the hands of said council at the time the said ordinance was read the third time and passed, on the 23rd day of April, 1900.

The burden of proof is upon the plaintiff.

The petition offered as an affidavit is off-set by the affidavit offered by defendant denying the statements of plaintiff in this particular, and plaintiff has therefore failed to show by a preponderance of the evidence, that the requisite number of consents have not been obtained.

R. H. Platt, J. H. Collins, J. G. Mitchell, for Plaintiff.

Merrick, Tompkins & Sharp, for Defendant.